UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERI FELL,                          :
                                    :CIVIL ACTION NO. 3:12-CV-275
        Plaintiff,                  :
                                    :(JUDGE CONABOY)
            v.                      :
                                    :
MICHAEL J. ASTRUE,                  :
COMMISSIONEROF SOCIAL               :
SECURITY,                           :
                                    :
        Defendant.                  :
                                    :

_____

**MEMORANDUM**

Here we consider Plaintiff's appeal from the Commissioner's

denial of Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social

Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 1.)

The Administrative Law Judge ("ALJ") who originally evaluated the

claim found that Plaintiff had the residual functional capacity to

perform sedentary work with certain limitations and so denied

Plaintiff's claim for benefits.  (R. 17, 24-25.)  With this action,

Plaintiff argues that the determination of the Social Security

Administration is error for three reasons: 1) the ALJ's

determination that Plaintiff's severe impairments are limited to

her lumbar spine is not supported by substantial evidence; 2) the

ALJ's conclusion that Plaintiff did not meet or equal impairment

listing 1.04A is not based on substantial evidence; and 3) the

ALJ's conclusion that Plaintiff retains the residual functional

capacity to do sedentary type work is not based on substantial

evidence.  (Doc. 12 at 4-5.)

For the reasons discussed below, we conclude remand to the Commissioner is required.

## I. Background

On August 18, 2008, Plaintiff protectively filed applications for Title XVI Supplemental Security Income (R. 106) and Title II Disability Insurance benefits (R. 109).  Plaintiff, whose date of birth is September 22, 1982, claimed disability beginning on June 5, 2008.  (R. 106.)  Plaintiff listed the illnesses, injuries, or conditions that limited her ability to work as "back injury with bulging disc, arthritis, depression and bipolar disorder."  (R. 129.)  She added that she could not sit or stand for long periods, could not turn her body, and was very limited on what she could do. (*Id.*)

Plaintiff had past work as a fast food worker and manager, concession stand clerk, and bus clerk.  (R. 25, 55, 73-74, 106, 134.)  Plaintiff, who obtained a general education diploma in 2002, is a single mother of two children, ages seven and four in January 2010.  (R. 54-55.)

The Social Security Administration denied Plaintiff's application by decision dated December 23, 2008.  (R. 82-91.)  On February 23, 2009, Plaintiff filed a timely Request for Hearing before an Administrative Law Judge.  (R. 93.)  On January 8, 2010, ALJ Paul McAdam held a hearing at which Plaintiff and a vocational

expert ("VE") testified.  (R. 48-78.)

In response to the question of why she was unable to work, Plaintiff testified that it was the pain: that it hurt to stand more than 10 to 15 minutes, hurt to walk and bend over.  Plaintiff stated "[i]t hurts to do pretty much anything.  I can't lift anything."  (R. 57-58.)  She reported the pain to be in her lower, mid, and upper back, but primarily in the lower back.  Plaintiff described the pain as "feel[ing] like there's something digging into my lower back and twisting and the pain radiates down my right leg. And my middle and upper back are very stiff and feels like there's constantly pressure, constant muscle spasms that are very painful."  (R. 58.)

At the time of the hearing, Plaintiff was taking Vicodin, Flexeril, and Mobic for pain.  (R. 59.)  Plaintiff noted that treating physician, Leroy Pelicci, M.D., had discussed surgery with her but he wanted to see what else he could do.  (R. 60-61.) Plaintiff said we was seeing Dr. Pelicci on a monthly basis and was in the process of being scheduled for additional physical therapy.  (R. 60.)

Plaintiff reported that there are days she cannot get out of bed, get up the stairs, and tend to her children because of the pain, that medication relieves some pain and the effectiveness of the medication varies.  (R. 58-59.)  Plaintiff stated she can lift five to ten pounds.  (R. 61.)  When questioned about walking,

3

Plaintiff testified that she tries not to because it hurts but she could probably go up to a city block on a good day. (R. 61.) She noted that she has to switch positions or lie down after sitting for twenty minutes. (R. 62.) Plaintiff avoids bending and her right hand goes numb about two to three times per week for thirty to forty-five minutes. (R. 62.) Plaintiff is able to bathe and dress herself and do housework. (R. 62.) She tries to be involved with her children's activities. (R. 62.) Plaintiff indicated that she lies down periodically during the day, generally using a heating pad, for half hour to an hour to let the pain in her back ease up. (R. 64-65, 68.) Plaintiff stated that about three times a week she can't do much of anything but lie down. (R. 71.) On those days she gets help from others. (R. 71.)

Following Plaintiff's testimony, the ALJ asked the VE questions assuming a hypothetical claimant with the same age, education and work experience as Plaintiff who could occasionally lift twenty pounds, frequently lift ten pounds, and could stand or walk about six hours in an eight-hour day. (R. 74.) The hypothetical claimant could occasionally balance, stoop, kneel, crouch, crawl, use ramps and climb stairs but should never climb ladders, ropes or scaffolds. (R. 74.) The VE stated that the hypothetical claimant could perform Plaintiff's past relevant work as a cashier eroded by fifty percent because approximately fifty percent of cashiers are offered the opportunity to have a stool.

4

(R. 75.)

The ALJ then added limitations: the hypothetical claimant could lift and carry up to ten pounds and would be limited to occupations that require no more than occasional fine fingering with her right hand and no more than occasional gross handling, overhead reaching, pushing and pulling with the upper and lower extremities to include the operation of hand levers and pedals and overhead work. (R. 75.) The VE testified that the hypothetical claimant could not perform Plaintiff's past work. (R. 75.) The VE further testified that jobs existed in the local, regional or national economy that the hypothetical claimant could perform: video monitor, information clerk and telephone answering service. (R. 75-76.) After the ALJ added a sit/stand at will option to this hypothetical claimant, the VE stated there would be no erosion.

Finally, the ALJ added that the hypothetical claimant would be absent from work three to five days per month as a result of symptomatology. (R. 76.) The VE testified there would be no jobs for such a claimant. (R. 76.)

Plaintiff's attorney followed up with a question regarding whether Plaintiff's testimony about her need to lie down periodically throughout a typical day would eliminate any competitive employment. (R. 77.) The VE stated that it would. (R. 77.)

By decision of March 5, 2010, ALJ McAdam found that Plaintiff

was not disabled within the meaning of the Social Security Act.
(R. 25.) He made the following findings of fact and conclusions of
law:

> 1. The claimant meets the insured status
>    requirements of the Social Security Act
>    through December 31, 2009.
>
> 2. The claimant has not engaged in
>    substantial gainful activity since June
>    5, 2008, the alleged onset date (20 CFR
>    404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe
>    impairment: disorders of the back
>    (discogenic and degenerative)(20 CFR
>    404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment
>    or combination of impairments that meets
>    or medically equals one of the listed
>    impairments in 20 CFR Part 404, Subpart
>    P, Appendix 1 (20 CFR 404.1520(d),
>    404.1525, 404.1526, 416.920(d), 416.925
>    and 416.926).
>
> 5. After careful consideration of the
>    entire record, I find that the claimant
>    has the residual functional capacity to
>    perform sedentary work as defined in 20
>    CFR 404.1567(a) and 416.967(a) further
>    limited as follows: the claimant can
>    occasionally lift and carry up to 10
>    pounds; stand, walk and/or sit for 6
>    hours in an 8 hour workday with an at
>    will sit/stand option; occasionally use
>    ramps and stairs but never climb
>    ladders, ropes or scaffolds, and
>    occasionally balance, stoop, kneel,
>    crouch, and crawl; and is limited to
>    occupations which require no more than
>    occasional fine fingering with the right
>    hand and no more than occasional gross
>    handling, overhead reaching, and pushing
>    and pulling with the upper and lower
>    extremities to include the operation of

6

hand levers and pedals and overhead work.

6. The claimant is unable to perform any past relevant work (20 CRF 404.1565 and 416.965).

7. The claimant was born on September 22, 1982 and was 25 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 5, 2008 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 14-25.)

In explanation of his residual functional capacity determination, the ALJ stated that he found

the claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The record evidence simply fails to corroborate the claimant's alleged degree of incapacity.

Initially I note that the claimant has extensive activities of daily living and her self-reported level of functioning is far greater than one would expect in the face of such alleged symptomatology. While I have no doubt the claimant experiences pain, her activities of daily living as self-reported in her function report (Exhibit 4E) and mirrored in her hearing testimony, suggest greater capabilities then [sic] her alleged symptomatology would permit and are far too substantial to overlook. By her own consistent reports, the claimant remains able to provide for her own personal care, cares for 2 young children which includes getting them ready for school, walking one to the bus stop, reading to them, assisting with homework, playing with them, cooks, cleans, shops, drives, and handles her finances. (Exhibit 4E, Hearing Testimony)

(R. 19-20.)

The ALJ then extensively reviewed Plaintiff's medical records. Citing numerous diagnostic studies, the ALJ concluded that, although they "confirm the presence of degenerative disc disease and radiculopathy, [they] do not disclose findings so severe that they corroborate the claimant's alleged degree of incapacity or support a finding of total disability." (R. 20.) He noted that the findings of a March 2009 MRI of the lumbar spine did not "reflect a severe deterioration in the claimant's condition from

8

previous studies." (R. 20.)

The ALJ further found that "objective signs and findings on physical examinations by various treating or examining physicians as well as the claimant's course of treatment and medication regimen and its effect on her condition are not suggestive of total disability." (R. 20.)

Reviewing the records of treating physicians Emmanuel Jacob, M.D., and Leroy Pelicci, M.D., the ALJ pointed to record evidence showing improved function and treatment effectiveness. (R. 21-22.) The ALJ noted Plaintiff reported no relief from the steroid blocks administered by Joseph Paz, D.O. (R. 22.)

The ALJ also reviewed the October 22, 2008, report of consultative examiner Toni Jo Parmelee, D.O. (R. 10.)

Finally, the ALJ reviewed opinion evidence, citing opinions rendered by Drs. Jacob, Pelicci, Parmelee, State Agency medical consultant Elizabeth Kanemar, M.D., and the State Workers' Compensation decision. (R. 22-23.) The ALJ accorded little weight to the opinions of Drs. Jacob and Pelicci that Plaintiff was unable to work for the following reasons: they address issues which are reserved to the Commissioner; and "the opinions are inconsistent with the record evidence as a whole . . . as well as the claimant's own activities of daily living and quite simply unfounded." (R. 23.)

Finding the opinion of consultative examiner Dr. Parmelee to

be "pretty consistent" with the medical evidence of record, the ALJ concluded her finding that Plaintiff retained the residual functional capacity for a range of light work with postural limitations to be a "slight overstatement" of Plaintiff's lifting and carrying abilities.  (R. 23.)  Similarly, he accorded "some weight" to Dr. Kamenar's opinion that Plaintiff had the residual functional capacity to perform light work with postural limitations.  (R. 23.)

The ALJ accorded no weight to the State Workers' Compensation decision that Plaintiff was entitled to benefits on the basis that "[d]eterminations by other government agencies that an individual is disabled are not binding on the Social Security Administration." (R. 23 (citing 20 C.F.R. §§ 404.1504, 416.904).)

As noted above, the ALJ ultimately decided that Plaintiff had the residual functional capacity to perform sedentary work with limitations (R. 17) and that jobs exist in the national economy that Plaintiff can perform (R. 24).  Thus, he determined that Plaintiff had not been under a disability as defined in the Social Security Act from June 5, 2008, through the date of his decision, March 5, 2010.  (R. 25.)

On or about March 23, 2010, Plaintiff filed a timely request with the Social Security Administrations Appeals Council for review.  (R. 7.)  In an Order dated December 15, 2011, the Appeals Council denied Plaintiff's Request for Review (R. 1), making the

ALJ's decision the decision of the Commissioner.

Plaintiff filed this action on February 10, 2012. (Doc. 1.) She filed her brief in support of the appeal on August 4, 2012, in which she asserts the bases for relief noted above: 1) the ALJ's determination that Plaintiff's severe impairments are limited to her lumbar spine is not supported by substantial evidence; 2) the ALJ's conclusion that Plaintiff did not meet or equal impairment listing 1.04A is not based on substantial evidence; and 3) the ALJ's conclusion that Plaintiff retains the residual functional capacity to do sedentary type work is not based on substantial evidence. (Doc. 12 at 4-5.) Defendant filed his opposition brief on September 5, 2012. (Doc. 13.) With the filing of Plaintiff's reply brief (Doc. 14) on September 19, 2012, this matter became ripe for disposition.

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

11

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that

---

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

12

exist in the national economy that Plaintiff is able perform.  (R. 24-25.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### IV. Discussion

#### A. *General Considerations*

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). These proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative

purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence. If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky*, 606 F.2d at 407. In *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Only where the ALJ rejects conflicting probative evidence must he fully explain his

reasons for doing so. *See*, *e.g.*, *Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 788-89 (3d Cir. 2003) (citing *Kent v. Schweiker*, 710 F.2d110, 114 (3d Cir. 1983)). Further, the ALJ does not need to use particular language or adhere to a particular format in conducting his analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

## B. *Plaintiff's Alleged Errors*

As set out above, Plaintiff asserts the ALJ erred on three bases: 1) failing to properly consider all of Plaintiff's spinal impairments; 2) finding Plaintiff did not meet or equal impairment listing 1.04A; and 3) concluding Plaintiff retains the residual functional capacity to do sedentary type work. (Doc. 12 at 4-5.)

## 1. *Limitation of Severe Impairments*

Plaintiff asserts the ALJ's determination that Plaintiff's severe impairments are limited to her lumbar spine is not supported by substantial evidence. (Doc. 12 at 5.) In support of this assertion she states "[i]t is evident the Judge only considered the Plaintiff's lumbar spine impairment and did not take into consideration the severe impairments affecting her cervical spine." (Doc. 12 at 5.) Defendant responds that the ALJ's determination at

step two of the sequential evaluation process considered involvement of her cervical spine. (Doc. 13 at 12.) Plaintiff did not address Defendant's response in her reply brief. (Doc. 14.)

We conclude Plaintiff has not met her burden of showing that the ALJ erred on this basis. He found that Plaintiff had the severe impairment of "disorders of the back (discogenic and degenerative)." (R. 14.) The ALJ's discussion of the medical evidence includes review of studies, examination and evaluation of the cervical spine. (R. 20-22.) Thus, on the basis of the record before us, we cannot conclude the ALJ did not consider Plaintiff's cervical spine impairment.

## 2. *Listing Impairment 1.04*A

Plaintiff maintains the ALJ's conclusion that she did not meet or equal impairment listing 1.04A is not based on substantial evidence. (Doc. 12 at 5.) In support of this assertion Plaintiff points to Dr. Pelicci's examination notes and opinions and the support of consistent reports from other physicians as well as consistent diagnostic studies. (Doc. 12 at 7-8.) Defendant responds that Plaintiff did not meet her burden of showing that she had an impairment of listing-level severity--although she asserts she meets listing 1.04A, she does not connect supporting evidence to each required element. (Doc. 13 at 16.) Plaintiff replies that her impairments equal listing 1.04A in that the findings from at least three of her doctors and objective testing "document severe

17

impairments of both the *cervical and lumbar spine*" (Doc. 14 at 3) and it is evident from the ALJ's analysis of the issue that he focused exclusively on the lumbar impairment with no attention given to the cervical impairment (*id.* at 4).

We conclude that although Plaintiff may not have initially met her burden on this issue, she is accurate that the ALJ's analysis at this step addressed only her lumbar spine impairment. (*See* R. 17.) Because we conclude remand is required on another basis, *see infra*, we direct the Commissioner to review this issue on remand. This determination is based in part on the ALJ's reported consideration of the State Agency medical consultant's opinions coupled with the ALJ's notation that "[s]ince the determination was made, there has been no additional medical evidence submitted that would support presumptive disability in this matter." (*Id.*) The State Agency consultant's opinion is dated December 15, 2008. Dr. Pelicci's treatment of Plaintiff began in February 2009 and included examination and diagnostic study with observation and findings as to *all areas* of the spine. (*See* R. 439-455.) Of additional significance is the fact that Dr. Pelicci testified that Plaintiff's condition is progressively worsening and evolving over time. (R. 394-96.)

### 3.   *Residual Functional Capacity Determination*

Finally, Plaintiff contends the ALJ's conclusion that Plaintiff retains the residual functional capacity to do sedentary

type work is not based on substantial evidence. (Doc. 12 at 5.)
In support of her argument, Plaintiff points to the reports of her
treating physicians and the ALJ's lack of deference to these
opinions. (Doc. 12 at 9-10.) Defendant asserts that the ALJ
properly considered the treating physicians' reports and the
treating physicians' opinions are not entitled to controlling
weight. (Doc. 13 at 19-22.) Plaintiff replies that the ALJ's
inadequate consideration of the record regarding evidence
supporting disability and Plaintiff's daily activities render the
decision erroneous. (Doc. 14 at 4-8.)

Upon consideration of the record and relevant legal authority,
we conclude remand is required for reconsideration of the ALJ's
residual functional capacity determination.

At the outset of our discussion of the issues raised by
Plaintiff's claimed error, we recognize the Third Circuit Court of
Appeals has specifically acknowledged that "[c]omplaints of
disabling back pain are the most difficult types of claims to
resolve with any degree of certainty." *Taybron v. Harris*, 667 F.2d
412, 415 (3d Cir. 1981). "This is because the inability to sustain
employment is attributable to symptoms that are often incapable of
objective measurement." *Cruz v. Chater*, 990 F. Supp. 375, 378 n.4
(M.D. Pa. 1998) (*citing Taybron*, 667 F.2d at 415). After
discussing the difficulty in resolving such claims at the
administrative level, *Taybron* noted the similar difficulty in

reviewing these claims and set out a reviewing court's responsibility.  *Taybron*, 667 F.2d at 415.  "[I]n order to perform our function responsibly and in order to insure that the claimant gets thorough consideration of his claim to which he is entitled, we believe every effort should be made to secure any medical evidence that would help resolve doubts about the outcome of the claim."  *Id.*

The "treating physician rule," is codified at 20 C.F.R. 404.1527(d)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986).  The regulation addresses the weight to be given a treating physician's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight."  20 C.F.R. § 416.927(d)(2).[2]  "A

_____

[2] 20 C.F.R. § 404.1527(d)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature

cardinal principle guiding disability eligibility determinations is
that the ALJ accord treating physicians' reports great weight,
especially when their opinions reflect expert judgment based on
continuing observation of the patient's condition over a prolonged
period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.
2000) (citations omitted); see also *Brownawell v. Commissioner of
Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).  In choosing to
reject the treating physician's assessment, an ALJ may not make
"speculative inferences from medical reports and may reject a
treating physician's opinion outright only on the basis of
contradictory medical evidence and not due to his or her own
credibility judgments, speculation or lay opinion."  *Morales*, 225
F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.
1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Here the ALJ essentially rejected the opinions of Drs. Jacob

---

and severity of your impairment(s) is well-
supported by medically acceptable clinical and
laboratory diagnostic techniques and is not
inconsistent with the other substantial
evidence in your case record, we will give it
controlling weight. When we do not give the
treating source's opinion controlling weight,
we apply the factors listed in paragraphs
(d)(2)(i) and (d)(2)(ii) of this section, as
well as the factors in paragraphs (d)(3)
through (d)(6) of this section in determining
the weight to give the opinion. We will always
give good reasons in our notice of
determination or decision for the weight we
give your treating source's opinion.

and Pelicci that Plaintiff was unable to work, concluding the opinions address issues reserved to the Commissioner and finding them to be "inconsistent with the record evidence as a whole as previously discussed as well as the claimant's own activities of daily living and quite simply unfounded."  (R. 23.)

The problem with this conclusion and the ALJ's assessment of related evidence is at least threefold: 1) a treating physician's conclusion regarding a claimant's ability to work should not be disregarded on the basis that it can be construed as addressing the ultimate issue of disability reserved to the Commissioner; 2) the ALJ's findings regarding Plaintiff's credibility do not comport with relevant guidance; and 3) in his review of the record, the ALJ highlights certain aspects of some reports out of context.

First, we conclude the ALJ improperly rejected the opinions of Drs. Jacob and Pelicci on the basis that they addressed an issue reserved for the Commissioner.  In his deposition testimony, Dr. Pelicci testified "given the amount of symptoms, I don't think she's able to work."  (R. 400.)  Before expressing his opinion, Dr. Pelicci explained Plaintiff's worsening condition (R. 394-96) and the origin of some of her pain (R. 395), noted that his treatment provided only temporary relief and she remained quite symptomatic (R. 396-97), and that he was considering referring her to a neurosurgeon (R. 397).  Dr. Jacob explained he believed Plaintiff was unable to engage in any kind of employment because she tried to

return to work and this increased her pain and symptoms (R. 307-08) and, although treatment provided some relief to allow her to function, the pain intensifies with increased activity (R. 315). Furthermore, these physicians correlated Plaintiff's symptoms with clinical and diagnostic findings. (*See*, *e.g.*, R. 314, 395.)

The Third Circuit Court of Appeals has found this type of treating physician opinion acceptable. *See Brownawell*, 554 F.3d at 355. Our Circuit Court has rejected an ALJ's discounting of a treating physician's indication that a plaintiff is "disabled," noting that "[r]ather than focusing on the doctor's choice of words, the ALJ was obligated to examine the substantive evidence on which the physician's conclusion was based." *Masher v. Astrue*, 354 F. App'x 623, 627-28 (3d Cir. 2009) (not precedential). With this guidance, we conclude the ALJ should not have rejected the treating physicians' opinions on the basis that they addressed an issue reserved to the Commissioner.

We now turn to the ALJ's exclusion of certain evidence on which the treating physicians' opinions were based, *i.e.*, their "inconsist[ency] with record evidence as a whole and the claimant's own activities of daily living." (R. 23.) Both doctors' opinions were based on evaluation of diagnositic studies, clinical findings and Plaintiff's subjective reporting of her pain and limitations. Because part of the rejection of the treating physicians' opinions was based on Plaintiff's credibility, we will first address the

proper consideration of a claimant's credibility and subjective reports of pain.

Generally, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997) (citation omitted). The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain, shortness or breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding his or her symptoms:

> In general, the extent to which an
> individual's statements about symptoms can be

> relied upon as probative evidence in
> determining whether the individual is
> disabled depends on the credibility of the
> statements. In basic terms, the credibility
> of an individual's statements about pain or
> other symptoms and their functional effects
> is the degree to which the statements can be
> believed and accepted as true. When
> evaluating the credibility of an individual's
> statements, the adjudicator must consider the
> entire case record and give specific reasons
> for the weight given to the individual's
> statements.

SSR 96-7p.

Here there is evidence that Plaintiff's treating physicians consider her symptoms consistent with their examinations and diagnostic findings. (*See*, *e.g.*, R. 183-99, 390-96, 439-55.) As set out above, the ALJ provides the following reasons for discounting Plaintiff's subjective statements about the limitations of her impairments:

> I find the claimant's medically determinable
> impairments could reasonably be expected to
> cause the alleged symptoms; however, the
> claimant's statements concerning the
> intensity, persistence and limiting effects
> of these symptoms are not credible to the
> extent they are inconsistent with the above
> residual functional capacity assessment. The
> record evidence simply fails to corroborate
> the claimant's alleged degree of incapacity.
>
> Initially I note that the claimant has
> extensive activities of daily living and her
> self-reported level of functioning is far
> greater than one would expect in the face of
> such alleged symptomatology. While I have no
> doubt the claimant experiences pain, her
> activities of daily living as self-reported
> in her function report (Exhibit 4E) and
> mirrored in her hearing testimony, suggest

25

> greater capabilities then [sic] her alleged
> symptomatology would permit and are far too
> substantial to overlook.  By her own
> consistent reports, the claimant remains able
> to provide for her own personal care, cares
> for 2 young children which includes getting
> them ready for school, walking one to the bus
> stop, reading to them, assisting with
> homework, playing with them, cooks, cleans,
> shops, drives, and handles her finances.
> (Exhibit 4E, Hearing Testimony)

(R. 19-20.)

First, we note the ALJ's statement that Plaintiff's reports concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are not consistent" with his RFC determination (R. 26) may be a statement of his assessment of Plaintiff's subjective reporting, but it does not provide a valid reason for discounting the alleged symptoms. Moreover, the ALJ does not mention limitations about which Plaintiff testified: Plaintiff indicated there were days she could not do much of anything except lie down and this occurred about three times per week and on these occasions she gets help from others to care for her children.  (R. 71.)  As noted in *Payton v. Shalala*, 25 F. 3d 684 (8th Cir. 1994),

> a claimant need not prove that he or she is
> bedridden or completely helpless to be found
> disabled.  In order to find that a claimant
> has the RFC to perform a certain type of
> work, the claimant must have the ability to
> perform the requisite acts day in and day
> out, in the sometimes competitive and
> stressful conditions in which people work in
> the real world.

26

25 F.3d at 684 (internal quotations and citations omitted).

Here we conclude the ALJ's limited review of Plaintiff's testimony and circular reasoning in discounting her subjective complaints render his credibility finding without substantial evidence. In turn this affects his RFC determination because the VE, when given a hypothetical which included all of Plaintiff's alleged limitations, testified that such a claimant could not be a productive member of the workforce. (R. 76-77.)

We also conclude that the ALJ's review of the record improperly highlights certain aspects of some reports out of context. In addition to the Plaintiff's credibility considerations discussed above, the ALJ points to evidence that Plaintiff improved with treatment and experienced improved functioning.[3] (*See*, *e.g.*, R. 21, 22.) He does not balance these observations with information in the same report that Plaintiff "has ongoing symptomology of pain in the cervical, mid and low back area. She has significant stiffness in these areas with inflexibility. It has been something she continues to struggle with daily." (R. 441.) Similarly, where the ALJ points to effectiveness of treatment in Dr. Pelicci's reports (R. 22), he does not note her significant ongoing problems. (R. 445, 450, 451, 453, 454, 455.)

---

[3] Our Circuit Court has noted that "a doctor's observations that a patient is stable and well controlled with medication during treatment does not necessarily support the medical conclusion that the patient can return to work." *Brownawell*, 554 F.3d at 356 (internal quotation omitted).

Additionally, in his deposition testimony, Dr. Pelicci testified that relief from trigger point injections is temporary and that she is still very symptomatic.  (R. 396-97.)

This review of the record indicates the ALJ did not properly consider evidence which calls into question his reasons for rejecting Plaintiff's treating physicians' opinions.  Therefore, we cannot say the ALJ afforded proper weight to the opinions of Drs. Jacob and Pelicci.  Where we cannot say an ALJ has afforded sufficient weight to a treating physician's opinion, we cannot say the ALJ's decision is supported by substantial evidence and the case must be remanded.  *See*, *e.g.*, *Brownawell*, 554 F.3d at 355; *see also Bryan v. Commissioner of Social Security*, 383 F. App'x 140, 150 (3d Cir. 2010) (not precedential); *Masher v. Commissioner of Social Security*, 354 F. App'x 623, 628 (3d Cir. 2009) (not precedential).

### V. Conclusion

For the reasons discussed above, this case must be remanded to the Commissioner for further consideration consistent with this opinion.  An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: November 25, 2013